UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

            v.                              5:05-CR-382

RAYSHONN HESTER,

                    Defendant.
_____

| APPEARANCES | OF COUNSEL |
|---|---|
| **OFFICE OF THE UNITED STATES ATTORNEY**<br>James Hanley Federal Building<br>100 South Clinton Street<br>P.O. Box 7198<br>Syracuse, New York 13261-7198<br>Attorneys for the United States | **RANSOM P. REYNOLDS, III, AUSA** |
| **OFFICE OF JEFFREY DEROBERTS**<br>333 East Onondaga Street, 3rd Floor<br>Syracuse, New York 13202<br>Attorneys for Defendant | **JEFFREY DEROBERTS, ESQ.** |

**SCULLIN, Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On December 23, 2005, Defendant filed a motion for a "Suppression Hearing to determine whether the stop and search of the Defendant was warranted under the Constitution of the United States." *See* Dkt. No. 7, Notice of Motion. On February 10, 2006, the Court heard oral argument in support of, and in opposition to, that motion. After hearing the argument of both counsel, the Court granted Defendant's motion for a suppression hearing. On March 2, 2006, the Court held that suppression hearing, at which Officer Dennis Welch and Officer Joseph

Clabaugh testified.[1] At the conclusion of the hearing, the Court found that, in light of the information that the Officers had at the time of the initial stop and pat-down search of Defendant, both the stop and the search were reasonable. Therefore, the Court denied Defendant's motion to suppress the evidence at issue. In addition, the Court informed the parties that it would issue a written decision setting forth the basis for its conclusions. The following constitutes the Court's written disposition of the pending motion.

## II. DISCUSSION[2]

It is well-established that, "consistent with the Fourth Amendment, [a police officer may] conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that

---

[1] Officer Welch and Officer Clabaugh are police officers in the Town of Camillus.

[2] Defendant is charged in a three-count Indictment with (1) "knowingly and intentionally possess[ing] with intent to distribute approximately 2.39 grams of a mixture and substance containing a detectable amount of cocaine base (crack), a schedule II controlled substance . . . [i]n violation of Title 21, United States Code, Section 841(a)(1), *see* Dkt. No. 1, Indictment, at Count 1; (2) "knowingly carr[ying] a loaded firearm, to wit: (1) Ruger, model Security Six, .357 Magnum caliber, serial number 155-09739, manufactured in Connecticut, during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States, to wit: a violation of 21 U.S.C. § 841(a)(1) as set forth in Count One . . . [i]n violation of Title 18, United States Code, Section 942(c)(1)(A)," *see id.* at Count 2, and (3) "having been convicted of a crime punishable by a term of imprisonment exceeding one year, that being a conviction for the New York State felony crime of Criminal Possession of a Controlled Substance Third Degree in Cortland County Court, knowingly received and possessed a firearm which had been shipped and transported in interstate commerce, to wit: (1) Ruger, model Security Six, .357 Magnum caliber, serial number 155-09739, manufactured in Connecticut . . . [i]n violation of Title 18, United States Code, Section 922(g)(1) and 924(a)(2)," *see id.* at Count 3. In addition to these three counts, the Indictment also contains a forfeiture allegation, which seeks, among other things, the forfeiture of $1,561.33 in United States Currency, which the Government alleges constitutes proceeds "that said defendant obtained directly or indirectly as a result of [the violation set forth in Count 1] and [constitutes] property used or intended to be used in any manner or part to commit or to facilitate the commission of the violation alleged in Count 1 of this Indictment." *See id.* at "Forfeiture Allegation," at ¶ 2.

criminal activity [may be] afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing [*Terry v. Ohio*,] 392 U.S., at 30, 88 S. Ct. 1868).  Moreover, although "'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop." *Id.* (citing *United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989)).  Thus, "[t]he officer must be able to articulate more than an 'inchoate and unparticularized suspicion or "hunch"' of criminal activity." *Id.* at 123-24 (citing *Terry*, [392 U.S.] at 27, 88 S. Ct. 1868) (footnote omitted).

Furthermore, in conjunction with such a stop, if the officer justifiably believes that the individual whom he has stopped is armed and presently dangerous, "there [is] a narrowly drawn authority to permit a reasonable search for weapons for the protection of [a] police officer, . . ., regardless of whether he has probable cause to arrest the individual for a crime." *Terry v. Ohio*, 392 U.S. 1, 27 (1968).  To fall within this "narrowly drawn authority," a search must meet two requirements.  "First, it cannot be motivated solely by a 'hunch' that an individual is armed and dangerous . . . [rather] [t]here must instead be a suspicion supported by 'specific reasonable inferences which [the officer] is entitled to draw from the facts in light of his experience.'" *United States v. Casado*, 303 F.3d 440, 444 (2d Cir. 2002) (quoting [*Terry*, 392 U.S. at 27]).  "Second, the weapons search must be 'confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer.'" *Id.* (quoting [*Terry*, 392 U.S.] at 29, 88 S. Ct. 1868).

In the present case, Officer Welch testified that the Onondaga County 911 Center advised him of a complaint of a suspicious vehicle, a blue Chevrolet Monte Carlo, parked in the parking

lot of the Pinewoods Apartment Complex located at 3521 Milton Avenue and that, after parking the car, the driver had walked away from the car and out of the parking lot. The 911 Center also provided Officer Welch with a description of the driver: an African-American male wearing a gray sweatshirt, a white T-shirt, and jeans.

When Officer Welch arrived on the scene, he found the car and noticed that there were several bullet holes in the trunk and hood, none of which were rusted. He opened the passenger-side door of the car to see if there was any blood on the seat and, while doing so, noticed a funeral card for Desean Hester on the dash of the passenger side of the car.[3] After other officers arrived, they took photos of the car and then drove to the Town of Camillus Police Department, which was only a few blocks away, to discuss how to proceed.

Officer Welch then returned to the scene, parked his vehicle in a parking lot located east of the car, and waited for someone to return to the car. After approximately one and one-half hours, Officer Welch saw a black male matching the description that the 911 Center had provided to him walking toward the car. After contacting the 911 Center to ask for the description of the individual again, he advised the 911 Center dispatcher that he would be with the individual and asked the dispatcher to send another car.

Officer Welch drove his vehicle toward the individual, who, upon seeing Officer Welch,

---

[3] Officer Welch called his Sergeant and told him about the funeral card. His Sergeant informed him that Desean Hester had been a member of the Boot Camp gang and had been a victim of a homicide. Officer Welch also called the City of Syracuse Police Department to ask if they had a record of any incidents of "shots fired" or of a car matching the description of the Monte Carlo.

turned and started to walk away.[4] Officer Welch then asked Defendant if he could talk to him. Defendant responded that he needed to make a phone call, which he did using his cell phone. Defendant spoke to someone, later identified as his girlfriend, for approximately 30-45 seconds and asked her to bring him the keys to the car and told her that he was in the parking lot with the cops.[5] Officer Welch also asked Defendant for some identification, and Defendant produced an Onondaga County Sheriff's id, which identified him as Rayshonn Hester. During this time, Officer Welch noticed that Defendant seemed uncomfortable, nervous, and kept looking around as if he were looking for a way to leave. In response to questioning, Defendant told Officer Welch that he had driven the car, that he was not injured, and that there had not been anyone in the car with him. When Officer Welch asked Defendant specifically about the bullet holes in the car, Defendant stated that he had purchased the car with the holes in it. Officer Welch estimated that his conversation with Defendant lasted 30-45 seconds.

While Officer Welch was talking to Defendant, Officers Clabaugh and Raymond arrived on the scene in separate patrol cars. Defendant's girlfriend, Sheila Douglas, also arrived. Ms. Douglas became agitated and began yelling at the police. Based upon Ms. Douglas' conduct, Officer Welch believed that the situation was deteriorating. Officer Clabaugh then asked Defendant to follow him to his patrol car while Officer Welch was performing some checks on Defendant and Ms. Douglas.

As he was performing the checks, Officer Welch heard Officer Clabaugh yell "gun," at

---

[4] At the hearing, Officer Welch identified the individual in the parking lot as Defendant. Therefore, the Court will hereafter refer to that individual as Defendant.

[5] Although Officer Welch asked Defendant why he was approaching the car if he didn't have the keys, Defendant did not respond.

which point Officer Welch drew his weapon and pointed it at Ms. Douglas because she was unsecured, and he told her to put her hands up.  Officer Welch then noticed that Officer Clabaugh was on top of Defendant on the ground and that near them was a silver gun.  He also saw Officer Clabaugh put handcuffs on Defendant.  Officer Welch then patted Ms. Douglas down and handcuffed her.

Officer Clabaugh corroborated Officer Welch's testimony.  He stated that, as he approached the scene in his vehicle, he saw Officer Welch with a black male and that a black female was approaching them.  Officer Clabaugh asked the black female – Ms. Douglas – what she was doing and told her to hold on.  He also noted that she seemed very agitated.

Officer Clabaugh observed that Defendant was acting nervous and that he kept touching his right pocket area.  He asked Defendant to go with him to his patrol car because he wanted Defendant to sit in the car while Officer Welch was performing the checks.  When they arrived at the patrol car, which was approximately fifteen feet away, Officer Clabaugh told Defendant to put his hands on the patrol car so that he could pat-search him before he got into the car.  Officer Clabaugh's pat-search of Defendant consisted of moving his hands across the outside of Defendant's clothing from left to right around Defendant's waist area.  When he reached Defendant's right waist band, he felt something that he thought was a trigger of a gun, at which point he yelled "gun" and put Defendant on the ground.  Officer Raymond, who had accompanied Defendant and Officer Clabaugh to the patrol car, took the gun from Defendant while Officer Clabaugh handcuffed Defendant and stood him up.  At this point, Officer Clabaugh searched Defendant's pockets where he found cash and two cell phones.  The Officers then transported Defendant to the City of Syracuse Police Criminal Investigation Division, where a

further search of Defendant revealed that he possessed cocaine.

The Officers' testimony makes clear that their stop and pat-search of Defendant was reasonable in light of the information that they had available to them. At the time that he initially stopped Defendant, Officer Welch knew that (1) Defendant matched the description of the person who had parked the car in the parking lot, (2) the car in question had multiple bullet holes in it, (3) Defendant began to walk away when he saw Officer Welch approach, and (4) Defendant appeared nervous and kept looking around as he was talking to Officer Welch. Based upon these facts, the Court concludes that Officer Welch had a reasonable suspicion that criminal activity might be afoot; and, therefore, his brief stop of Defendant was consistent with the Fourth Amendment.

Moreover, at the time that Officer Clabaugh conducted his pat-search of Defendant, he knew that (1) Defendant was very nervous and that (2) he kept touching his right pocket area. He also concluded that a pat-search was necessary to ensure his safety before he placed Defendant in the patrol car.[6] Moreover, when he performed the pat-search, he limited that search to the outside of Defendant's clothing until he felt what he believed to be the trigger of a gun. It was only at that point that he lifted Defendant's shirt to see what the article actually was. Once he found the gun, Officer Clabaugh handcuffed Defendant and, only then, did he perform a more invasive search by putting his hands in Defendant's pockets, where he found money and two cell phones. Based upon these facts, the Court concludes that Officer Clabaugh had a reasonable suspicion that Defendant might be armed and limited his search of Defendant to areas of his body

---

[6] The Court notes that it would have been irresponsible for Officer Clabaugh not to pat-search Defendant before placing him in the patrol car.

where he could have concealed a gun. Therefore, the Court concludes that Officer Clabaugh's pat-search of Defendant was consistent with the Fourth Amendment.

### III. CONCLUSION

Accordingly, for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion to suppress the evidence obtained as a result of the Officers' stop and pat-search of him is **DENIED.**

**IT IS SO ORDERED.**

Dated: March 3, 2006
       Syracuse, New York

                                       Frederick J. Scullin, Jr.
                                       Chief United States District Court Judge